USCA1 Opinion

 

 November 22, 1994 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1269 FERNANDO PARRILLA-FUENTES, Plaintiff, Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee. ____________________ ERRATA SHEET The opinion of this court issued on November 15, 1994 is amended as follows: On cover sheet, change "APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND" to "APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO". November 15, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1269 FERNANDO PARRILLA-FUENTES, Plaintiff, Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen C. Cerezo, U.S. District Judge] ___________________ ____________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ ____________________ Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief for ______________________ _________________________ appellant. Guillermo Gil, United States Attorney, Maria Hortensia Rio, ______________ _____________________ Assistant United States Attorney, and Donna C. McCarthy, Assistant __________________ Regional Counsel, Department of Health & Human Services, on brief for appellee. ____________________ ____________________ Per Curiam. Claimant Fernando Parrilla Fuentes appeals __________ from the district court's judgment upholding the decision of the Secretary of Health and Human Services denying Parrilla's claim for social security disability benefits. Parrilla's application was filed on February 14, 1991 and denied. After proceedings before an administrative law judge ("ALJ"), the ALJ found that Parrilla was not disabled on or before September 30, 1985, when his insurance status expired. The Appeals Council approved the ALJ's decision and this appeal followed. Parrilla, who is in his late 50s, was employed as a construction worker. In his application he said he had been unable to work since January 1, 1980, due to a range of ailments concerning his heart, lungs, back, chest, asthma, nerves, and severe pain. The medical records are extensive. Without describing them in detail, they show the following: Parrilla has had high blood pressure since 1980. He has been treated with a variety of medications but there have been continuing episodes of high blood pressure, apparently in part because Parrilla did not invariably keep medical appointments or utilize the prescribed drugs. In general, there were few indications of any symptoms related to either high blood pressure or the medication for it, although on occasion Parrilla complained of various symptoms from various -2- -2- sources ranging from dizziness to weakness in the joints, to asthma, to stomach pains. The most negative report pertinent to his work status appears in a medical certificate filed in June 1984. The diagnosis was "hypertensive heart disease-hypertension." The condition was described as permanent. In relation to work disability, the "partial" box was checked with the comment: "This gentleman needs a more heroic treatment for his hypertension. His hypertension is controllable and he may be relocated on a lighter job than his present one." At the administrative hearing in January 1992, Parrilla said that he had not continued working after 1980 because of dizzy spells, high blood pressure and swollen knees due to gout. He said that he did not require help for his personal needs but did not do any chores or engage in any activities to entertain himself. He described serious leg swelling problems but indicated that these attacks could be avoided by diet. The ALJ refused to credit Parrilla's subjective complaints of pain, tension, difficulties in breathing or other symptoms reported through September 30, 1985; found that the claims of functional limitation were broad and vague; said that the admitted history of hypertension was fairly well controlled with medication; and concluded that Parrilla did not have any pain that significantly limited his -3- -3- ability to perform basic work-related activities through September 30, 1985, and was therefore not under a disability. The Appeals Council affirmed without opinion. On review of social security decisions, the administrative findings as to "any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. 405(g). An applicant is disabled for social security purposes where, over a specified period, a medically determinable condition makes the applicant unable to "engage in any substantial gainful activity . . . ." 42 U.S.C. 423(d)(1). The burden is upon the applicant to demonstrate that he is disabled. Evangelista v. Secretary of Health and ___________ _______________________ Human Services, 826 F.2d 126, 140 n.3 (1st Cir. 1987).  ______________ In determining disability, the agency utilizes a five- step process set forth in HHS regulations. See 20 C.F.R.  ___ 404.1520. At step 1, the applicant is not disabled if still working, id. (b), but Parrilla was not. Step 2 requires that ___ the applicant "must have a severe impairment," specifically an "impairment or combination of impairments which significantly limits [the applicant's] physical or mental ability to do basic work activities." Id. (c). Absent such ___ a severe impairment, regulations provide that the applicant is not disabled. Id. The basic work activities here ___ pertinent are "[p]hysical functions such as walking, -4- -4- standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. 404.1521(b)(1). The gist of Parrilla's claim on appeal in this court is that it was not permissible for the ALJ, without direct medical evidence to this effect, merely to assume that arguably severe high blood pressure did not preclude basic work activities. This, says Parrilla, called for an independent medical judgment and not the uninformed opinion of a lay administrative judge. This is so, Parrilla implies, even if we assume for purposes of argument that the high blood pressure was not itself accompanied by other symptoms or resultant injuries. High blood pressure is a generic condition. Perhaps, even without any direct symptoms, it may in some cases significantly impair work functions; but it certainly cannot be claimed that it always does so (nor does Parrilla make ______ such a claim). In this sense, the diagnosis is like injury to a spinal disk, depression, asthma, migraines or any of a thousand conditions that may, or not, significantly impair one's performance of ordinary work functions. In such cases, the burden is upon the applicant to offer affirmative evidence to show that a disorder, "not always disabling per se," is in the particular case sufficiently severe to disable the applicant. Sitar v. Schweiker, 671 F.2d 19, 20 (1st Cir. _____ _________ 1982)(depression). -5- -5- If it were the Secretary's burden to negate the claim of disability, we might agree that the affirmative evidence in the record does not establish the relationship that Parrilla's hypertension bears to his ability to perform work functions; there is only the barest medical reference to the possibility of his doing lighter work and even this reference provides conflicting inferences (i.e., that less exertional ____ work would be desirable but some type of work can be done). We have no reason to think that the ALJ is any more qualified than we are to make this determination. But the burden is upon the applicant to show that he is disabled, or, in this instance, to show that the generic impairment "significantly limits" the applicant's ability to do basic work functions. Here, the applicant was free to offer direct medical evidence (e.g., a doctor's opinion) to ____ show that he met the requirements. The "substantial evidence" test that applies to Secretarial findings does not mean that the Secretary must affirmatively show that the applicant is not disabled. ___ It is true that if the applicant's testimony about joint pain, swelling and the like had been credited in full, that testimony would certainly have gone a long way to establish the kind of severe impairment required at step 2. But this testimony had very little basis in the medical records and the ALJ, who heard the applicant testify, declined to credit -6- -6- the testimony. Nothing in Parrilla's brief gives us any reason why we should disturb the ALJ's appraisal of an interested witness. Affirmed. ________ -7- -7-